IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 2:03-CR-0047 (20) |
| | § | |
| MANUEL ISAAC ROMERO | § | |

## REPORT AND RECOMMENDATION TO DENY MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Defendant MANUEL ISAAC ROMERO has filed with this Court a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. For the reasons hereinafter expressed, the undersigned Magistrate Judge is of the opinion defendant's motion is without merit and should be DENIED.

I.
PROCEDURAL HISTORY

On April 29, 2003, defendant was charged in one count of a 17-count indictment with the offense of conspiracy to possess with intent to distribute 500 grams or more of a mixture containing a detectable amount of methamphetamine. On July 9, 2003, defendant pled guilty, pursuant to a plea agreement, to the charged offense. In the Factual Resume, defendant acknowledged he "participated in a conspiracy to distribute multiple pound quantities of methamphetamine" and that the punishment for the offense was imprisonment for a period not less than ten (10) years, to a maximum term of life imprisonment. At his re-arraignment, defendant again acknowledged his minimum and maximum penalties, but indicated his awareness that his actual sentencing range

would be a result of the application of the sentencing guidelines.

On August 15, 2003, an Amended Presentence Report was prepared which, after noting defendant's minimum and maximum penalties for a violation of 21 U.S.C. § 846, *see* 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), made the following findings:

> 24.   Romero obtained methamphetamine from Daniel and Denise Contreras. He purchased multiple pound quantities. Romero also was known to deal in large quantities of marijuana and cocaine. He distributed methamphetamine in Amarillo and Lubbock.
>
> . . .
>
> 26.   Specifically, to the count of conviction concerning Romero was originally identified in July 2002 by confidential informants informing DEA agents of the defendant's involvement in the sale of cocaine. Investigation revealed Romero sold cocaine, methamphetamine, and marijuana. In November 2002, another confidential source informed agents he/she purchased two pounds of methamphetamine from Romero at a price of $4,800 per pound. On at least one other occasion, he/she purchased another pound of methamphetamine from Romero. The confidential source also purchased 10 to 15 pounds of marijuana from Romero for $375 per pound.
>
> . . .
>
> 28.   According to investigative records, the defendant is held accountable for the following drug quantities pursuant to the relevant conduct guideline found at USSG § 1B1.3:
>
> | | |
> |---|---|
> | Half pound methamphetamine | March 26, 2003 telephone call |
> | Three pounds methamphetamine | November 2002 statement of confidential source |
> | 10 pounds marijuana | 2002 sale to confidential source |
>
> 29.   While it is known the defendant was involved in other drug transactions, some of which involved cocaine, and he stipulated in the Factual Resume he was involved in the conspiracy from January 2000 until April 2003, additional quantities are not utilized in the calculation of the guideline since amounts cannot be quantified.

The Presentence Report determined defendant's base offense level was 34, based on 3 ½ pounds of

methamphetamine (equivalent to 1.58 kilograms) and 10 pounds of marijuana (equivalent to 4.5 kilograms). The Report upwardly adjusted defendant's offense level by 3 points to 37 for defendant being a career offender.[1] Defendant was then given a 3-point deduction for acceptance of responsibility, resulting in a total offense level of 34.

In calculating defendant's criminal history score, the Report attributed 3 points each to the following adult criminal convictions where defendant was sentenced on December 16, 1994 to five (5) years imprisonment for each conviction, said sentences to run concurrently,:

| | |
|---|---|
| Unlawfully carrying a weapon on school premises | March 8, 1993 offense date<br>March 8, 1993 arrest date |
| Delivery of a controlled substance | March 18, 1994 offense date<br>June 21, 1994 arrest date |
| Delivery of a controlled substance | March 29, 1994 offense date<br>June 21, 1994 arrest date |

Based on the above adult criminal convictions, the Report determined defendant's criminal history score to be 9 and defendant's Criminal History Category to be IV. However, as defendant had been found to be a career offender, the Criminal History Category was upwardly adjusted to VI pursuant to USSG § 4B1.1. Based on a Criminal History Category of VI and a Total Offense Level of 34, defendant's Guideline Range of Imprisonment was 262 to 327 months.

Defendant did not file objections to the Report but, on September 30, 2003, filed a motion for a downward departure from the guideline range wherein he argued the career offender status attributed by the Report was a substantial overstatement of the nature of his prior criminal activity and requested the Court depart from the Guideline Range of 262 to 327 months. On October 1,

---

[1] The Report found the career offender provisions of USSG §4Ba.a applied because (1) defendant was at least 18 years old at the time of the instant offense, (2) the instant offense of conviction was a felony that was a controlled substance offense, and (3) defendant had at least two (2) prior felony convictions for controlled substance offenses.

2003, at the sentencing hearing, the District Judge granted defendant's motion for a downward departure to the degree that she struck the career offender enhancement which had upwardly adjusted defendant's offense level by 3 points and defendant's criminal history category by two levels.  Consequently, defendant was given a new guideline range of 151 to 188 months based on a Total Offense Level of 31 and a Criminal History Category of IV.  The District Judge then sentenced defendant ROMERO to a term of 188 months imprisonment for the instant offense, noting the Court had "already given [defendant] a substantial reduction because the Court [had] totally disregarded the career criminal status" after finding it did not "properly apply" to defendant. Judgment was subsequently entered.  Defendant did not file a direct appeal challenging his conviction and/or sentence.  On September 13, 2004, defendant filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

II.
CLAIMS

Defendant contends his sentence should be vacated because:

1. The Court committed error in calculating defendant's criminal history category;

2. Defendant was denied effective assistance of counsel in that counsel did not:

    a. object at sentencing to the erroneous criminal history category calculation;

    b. argue defendant's sentence should be further reduced as defendant was a minor/minimal participant; and

    c. request a recommendation from the Court that defendant be considered for the I.C.C. program through the BOP.

3. Defendant's sentence is in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely v. Washington*, 124 S.Ct. 2531 (2004).

III.
# MERITS

A.
## Criminal History Category Calculation

Defendant argues the Court committed error in calculating defendant's criminal history category. Defendant contends his two prior sentences for his delivery of a controlled substance convictions, which were each attributed three (3) points, should have been treated as one sentence under the Guidelines in calculating his criminal history score, thereby resulting in a criminal history score of less than 9. Defendant also contends counsel was ineffective for not objecting to this miscalculation at sentencing.

Following a conviction and exhaustion or waiver of the right to direct appeal, a defendant is presumed fairly and finally convicted. *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc), *cert. denied*, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992). As a result, review of convictions pursuant to section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude. Such issues may not be raised for the first time on collateral review without a showing of cause for failing to raise the issue on direct appeal and actual prejudice resulting from the alleged error. *Id.* Other types of error (non-constitutional or non-jurisdictional error) may not be raised under section 2255 unless the defendant demonstrates the error could <u>not</u> have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice. *United States v. Cervantes*, 132 F.3d 1106 (5th Cir. 1998). *See also United States v. Samuels,* 59 F.3d 526, 528 (5th Cir.1995) (collateral attack primarily limited to issues of constitutional or jurisdictional magnitude and, even then, movant must show both cause for not raising the issue on direct appeal and prejudice because of such failure; other errors may not be

raised unless movant shows both error could not have been raised on direct appeal, and error, if condoned, would result in complete miscarriage of justice); *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir.), *cert. denied*, 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992); *United States v. Drobny,* 955 F.2d 990, 994-95 (5th Cir.1992).

Defendant's alleged error, *i.e.*, that the Court erroneously calculated his criminal history category, is a non-constitutional, non-jurisdictional claim, *see United States v. Vaughn* 955 F.2d 367 (5th Cir. 1992) (a court's technical application of the sentencing guidelines does not create a constitutional issue). Such alleged error could have been raised in a direct appeal.[2] *See United States v. Baty*, 980 F.2d 977 (5th Cir. 1992), *cert. denied*, 508 U.S. 956, 113 S.Ct. 2457, 124 L.Ed.2d 672 (1993) (a defendant always has a right to appeal the court's application of the sentencing guidelines unless he waives that right as part of the plea agreement). Moreover, such alleged error, even if condoned, would not result in a complete miscarriage of justice. Defendant's failure to urge this alleged error on direct appeal acts as a bar to this Court's consideration of such error on collateral review.

Defendant has alleged, however, that he was denied effective assistance of counsel – a constitutional claim – because counsel was deficient for failing to object to the criminal history miscalculation and such failure prejudiced defendant. To determine whether counsel was ineffective for failing to object to the Report on the basis of a criminal history score miscalculation, the undersigned must address the merits of defendant's criminal history miscalculation ground. Consequently, defendant is able to present, in a collateral attack, a claim of a sentencing guideline

---

[2] Defendant does not claim he failed to raise the issue in a direct appeal because counsel failed to file an appeal on defendant's behalf asserting such claim. Even if such an allegation were made, such allegation would not refute the fact that defendant's claim *could have been brought* in a direct appeal.

error.

The Guidelines require that 3 points be added "for each prior sentence of imprisonment exceeding one year and one month." USSG §4A1.1(a). Section 4A1.2(a)(2) further provides:

> Prior sentences imposed in *unrelated* cases are to be *counted separately*. Prior sentences imposed in *related* cases are to be *treated as one sentence* for purposes of §4A1.1(a), (b), and (c).

(emphasis added). In the Commentary to that section, the Application Notes state the following:

> <u>Related Cases</u>.  Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (<u>i.e.</u>, the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

Defendant argues his two prior sentences for his delivery convictions should have been treated as one sentence for purposes of determining his Criminal History Category because said sentences were *related* in that they resulted from offenses that "were part of a single common scheme or plan." Defendant maintains the two crimes occurred only 11 days apart, took place in the same vicinity, and involved the same undercover officer. Defendant contends he planned the commission of the second crime during the course of the first crime, that the second offense was not a spur of the moment occurrence but, rather, was proposed and planned at the time of the first offense, and that the second delivery to the undercover officer could not have occurred but for the first delivery to the officer. Defendant concludes that since he jointly planned the two deliveries, his two prior state sentences are related as being part of a common scheme or plan and should have been treated as one sentence in calculating his criminal history score.

At sentencing, during the discussion with the Court concerning whether defendant's career offender status overstated the seriousness of his past offenses, the Government described

defendant's delivery offenses as follows:

> The offenses occurred eleven days apart. They were to the same undercover agent . . . and they were for a sixteenth ounce of cocaine. Those two offenses could have been charged in the same indictment. However, they weren't.

The Court "came to the same conclusion about the nature of the earlier offenses that the prosecutor has now stated, that those were very closely – they were separate offenses, but that they involved a period of activity at a particular period of time."

Neither defendant's self-serving arguments, or the statements of the government or the Court, establish that the two delivery offenses were part of a single common scheme or plan. Defendant has not demonstrated that the delivery offenses were anything more than merely two transactions involving the same undercover officer. Geographically, the first delivery took place at defendant's residence and was initiated by the undercover officer. The second delivery took place at a pool hall and was initiated by defendant after he recognized the officer from the previous delivery. Temporally, eleven (11) days passed between the two deliveries. Crimes that are merely similar are not necessarily related crimes, nor does a common criminal motive or similar modus operandi cause separate crimes to be related. *United States v. Robinson*, 187 F.3d 516, 519 (5th Cir. 1999). "Common scheme or plan" means more than repeated convictions for the same criminal offense. In his motion, defendant conclusorily argues he "planned the commission of the second crime during the course of the first crime." Defendant, however, submits nothing indicating the second delivery was an action proposed and planned at the time of the first offense. Nor has defendant shown the second offense could not have occurred but for the first offense. Defendant has not shown a factual nexus demonstrating the two delivery offenses were "jointly planned" or where the "commission of one crime entailed the commission of the other." Defendant has not established the two prior state

delivery convictions were related as being part of a common scheme or plan so that they should have been treated as one conviction for purposes of calculating defendant's criminal history score. *Cf. United States v. Ford*, 996 F.2d 83, 85 (5th Cir. 1993) (four prior delivery convictions were not part of a common scheme or plan even though all four arose from sales to the same undercover officer during a six-day period, two of which occurred on the same date at the same motel).

Defendant also argues his sentences for his two delivery convictions were related because they "were consolidated for trial or sentencing." Defendant pled guilty to the two offenses on the same date, his sentences were assessed on the same date, and said sentences were identical and ran concurrently. However, there was no formal consolidation order entered, and the cases had different docket numbers.

"[A] finding that prior cases were 'consolidated' will require some factual connexity between them, or else a finding that the cases were merged for trial or sentencing." *United States v. Huskey,* 137 F.3d 283, 288 (5th Cir. 1998). Either a formal order of consolidation or the listing of the two offenses in the same criminal information under the same docket number is sufficient to find that two separate offenses were consolidated. *See id.* By contrast, neither the fact that sentencing for both offenses occurs on the same day (and/or in the same proceeding) nor the imposition of identical, concurrent sentences is sufficient to find that factually distinct offenses were "related cases." *United States v. Kates,* 174 F.3d 580, 584 (5th Cir. 1999) (holding two drug possession offenses that occurred one week apart were not related even though the defendant was sentenced by the same judge on the same date for each offense and the sentences were concurrent). Defendant has not shown the delivery offenses were "consolidated for trial or sentencing" so as to be related for purposes of criminal history calculations. *Cf. United States v. Smith*, 2007 WL 14664

(5th Cir. January 3, 2007) (the defendant's four forgery offenses, although arrested for all four offenses on the same day, sentenced for all four offenses by the same court on the same date and with the same length of sentence, to be served concurrently, were not functionally consolidated so as to be related). Defendant's first ground should be DENIED.

B.
Effective Assistance of Counsel

Defendant argues counsel was ineffective for (1) failing to object at sentencing to the criminal history category calculation; (2) failing to argue defendant's sentence should be reduced as defendant was a minor/minimal participant, and (3) for failing to request a recommendation from the Court that defendant be considered for the I.C.C. program through the BOP. In his reply brief, defendant withdraws his claim concerning counsel's failure to request action from the Court so as to render him eligible for participation in the BOP's I.C.C. program. Consequently, only defendant's claims that counsel was deficient for failing to object to the criminal history category calculation and failing to request a "minor role reduction" will be addressed.

The proper standard for judging a defendant's contention that he is entitled to relief on the ground that his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland* standard, a defendant must first show that defense counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.*, 466 U.S. at 687. Specifically, counsel's performance must have fallen below an objective standard of reasonableness as determined by the norms of the profession. The performance inquiry must center

on whether counsel's assistance was reasonable considering all the circumstances which existed at the time of counsel's conduct. *Id.* at 688-90. Second, a defendant must show that counsel's deficient performance prejudiced the defense. To establish this second prong, a defendant must do more than simply allege prejudice, he must "affirmatively prove" prejudice. *Id.* at 693. Consequently, it is not enough for a defendant to show that the errors had some conceivable effect on the outcome of the proceeding. To establish prejudice in the context of a guilty plea, a defendant must show there is a reasonable probability that but for counsel's errors, defendant would not have pleaded guilty and, instead, would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985).

In reviewing an ineffective assistance of counsel claim, it is not necessary to first evaluate whether counsel's performance was deficient before examining whether defendant was prejudiced as a result of the alleged deficiencies. In fact, if a determination as to the prejudice prong is easier and disposes of an ineffectiveness claim, then that course should be followed. *Strickland v. Washington*, 466 U.S. at 698; *see also United States v. Fuller*, 769 F.2d 1095, 1097 (5th Cir. 1985).

Defendant argues counsel was ineffective for failing to object to the Report not treating his prior delivery of a controlled substance convictions as one sentence in calculating his criminal history score. As discussed in part III., subpart A. above, defendant has not shown these convictions were related as defined by the Guidelines and controlling caselaw. Consequently, any objection made by counsel to the calculations on the bases defendant asserts would not have been sustained. Counsel will not be held to be ineffective for failing to make meritless objections. Defendant's first ineffective assistance claim is without merit.

Defendant next contends counsel was ineffective for failing to argue defendant was eligible

for a sentence reduction under USSG § 3B1.2 for being a minor or minimal participant in the offense. A section 3B1.2(a) 4-level reduction for a *minimal* participant is intended to cover defendants who are plainly the least culpable of those involved in the conduct of a group and who's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is apparent. Downward adjustments for minimal participants are to be used infrequently. A section 3B1.2(b) 2-level reduction for a *minor* participant is intended to cover a defendant who is substantially less culpable than most other participants, but whose role in the conduct of the group was not minimal. Such a determination is heavily dependent upon the facts of the particular case. Defendant concludes that had counsel made such a request, the Court would have granted such and, as a result, defendant would have received a lesser sentence.

First, defendant has not shown a likelihood that the Court would have granted any motion for a sentence reduction under USSG § 3B1.2 for being a minor or minimal participant in the offense. Consequently, defendant cannot show he was actually prejudiced by counsel's failure to move for such a sentence reduction.

Secondly, defendant was not "substantially less culpable than the average participant." The conspiracy to possess and distribute methamphetamine involved 22 total co-defendants. In the Factual Resume, defendant acknowledged he was involved in the conspiracy from January 2000 to April 2003, but that he had begun selling methamphetamine in 1999 (defendant originally purchased the methamphetamine from the father of two of the co-conspirators but when the father died, he began purchasing the methamphetamine from the co-conspirators). The Presentence Report found defendant (1) purchased multiple pound quantities of methamphetamine from a co-conspirator and distributed the methamphetamine in Amarillo and Lubbock; (2) began buying approximately a

quarter pound of methamphetamine per month, but increased his purchases to one pound per month; (3) defendant sold two pounds of methamphetamine to a confidential informant for $4,800 per pound in November 2000; (4) on at least one other occasion, defendant sold one pound of methamphetamine to a confidential informant; (5) phone conversations were intercepted during which defendant discussed the purchase of various quantities of methamphetamine and the quality of methamphetamine defendant had previously purchased from a co-conspirator; (6) defendant was earning approximately $1,500 per month selling methamphetamine.  At sentencing, defendant attested that the Report was correct.

Defendant has not demonstrated he was "substantially less culpable than the average participant" in the conspiracy, or that he was "plainly the least culpable of those involved in the conduct" of the group and lacked any knowledge and understanding of the scope and structure of the enterprise and of the activities of others.  Further, defendant has not asserted any facts upon which counsel could have made a valid argument in support of a reduction under section 3B1.2.  Again, counsel will not be found to be ineffective for failing to raise a frivolous issue.  Defendant's claim of ineffective assistance of counsel is without any merit and should be denied.

### C.
### *Apprendi* Claim

Defendant argues his October 1, 2003 sentence violated the United States Constitution under the United States Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  Defendant appears to argue his sentence is in violation of *Apprendi* because the drug quantity attributed to him at sentencing was not specifically alleged in the indictment.  In *Apprendi*, the Supreme Court held the Constitution requires any fact which increases

the penalty for a crime *beyond the prescribed statutory maximum*, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2362-2363.

This claim is not cognizable because defendant did not raise this issue on direct appeal, and has failed to show adequate cause for his failure to raise the issue on direct appeal. *See, e.g., United States v. Shaid,* 937 F.2d 228, 232 (5th Cir. 1991) (en banc) (defendant may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default and "actual prejudice" resulting from the error). *See United States v. Cervantes*, 132 F.3d 1106 (5th Cir. 1998) (Constitutional questions ***may not*** be raised for the first time on collateral review if they were not raised on direct appeal without a showing of cause and prejudice).

Even if defendant was not barred from presenting this claim, his claim is without merit. *Apprendi* addressed only cases where the penalty for the crime *exceeded the prescribed statutory maximum* due to facts other than a prior conviction. Here, defendant pled guilty to, and was convicted of, the offense of conspiracy to possess with intent to distribute 500 grams or more of a mixture containing a detectable amount of methamphetamine. Pursuant to 21 U.S.C. § 841(b)(1)(A)(viii), the statutory maximum punishment was a term of imprisonment of not less than 10 years or more than life.[3] The trial court assessed defendant's punishment at 188 months imprisonment, a length which is clearly <u>under</u> *the statutory maximum sentence* of life imprisonment for his offense. *Apprendi* is not applicable to this case and no *Apprendi* error has been shown.

---

[3]Defendant acknowledged in his plea agreement that he was subjected to a term of imprisonment ranging from 10 years to life for the offense to which he was pleading guilty.

D.
*Blakely* Claim

Defendant also argues his October 1, 2003 sentence is unconstitutional under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (June 24, 2004) because the drug quantity attributed to him at sentencing was not alleged in the indictment. *Blakely* concerned a state's sentencing procedure which allowed a state judge to impose a sentence *above the offense's maximum punishment* if the judge found aggravating factors justified such an upward departure. In *Blakely*, the state sentencing judge determined such factors existed and sentenced the defendant to more than three (3) years *above the maximum sentence* established by the standard range. The Supreme Court found the facts supporting the state judge's finding were neither admitted by petitioner nor found by a jury. Noting the jury's verdict alone did not authorize the sentence, the Supreme Court found the state's sentencing procedure did not comply with the Sixth Amendment right to trial by jury.

Defendant was sentenced on October 1, 2003. *Blakely* was issued on June 24, 2004. On July 12, 2004, the Fifth Circuit held that *Blakely* did not extend, or apply, to the federal Sentencing Guidelines. *United States v. Pineiro*, 377 F.3d 464, 473 (5th Cir. July 12, 2004); *see also United States v. Cuellar,* 2004 WL 1854504, *1 (5th Cir. Aug. 18, 2004). Defendant filed the instant motion to vacate sentence on September 13, 2004. Therefore, under the law of this circuit at the time of defendant's sentencing and at the time this motion to vacate was filed, application of any enhancements to the Federal Sentencing Guideline range of punishment was appropriate and was not unconstitutional based upon *Blakely.*

In his reply brief, defendant references the then-pending case of *United States v. Booker*. On January 12, 2005, the United States Supreme Court handed down its decision in *United States v.*

*Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621(2005), whereby it extended the rules announced in its prior decisions of *Apprendi* and *Blakely* to the federal Sentencing Guidelines. The Court held:

> Accordingly, we reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

*Booker*, 543 U.S. at 244, 125 S.Ct. 756. A different majority of the Court then excised certain statutory provisions that had made the Guidelines mandatory, thereby rendering the Guidelines advisory. *Id.* at 756-57.

Defendant's conviction became final on October 11, 2003, upon the expiration of the time in which to file a notice of appeal. *See* Fed. R. App. P. 4(b)(1)(A)(i). Consequently, defendant's conviction became final <u>before</u> *Booker* was decided. *Booker* would have to be given retroactive effect for it to be applied to defendant's case. On April 28, 2005, the Fifth Circuit held *Booker* did not apply retroactively in successive motions brought under 28 U.S.C. § 2255. *In re Elwood*, 408 F.3d 211, 213 (5th Cir.2005). On December 8, 2005, the Fifth Circuit held *Booker* does not apply retroactively to cases on collateral review and therefore, the holding does not apply to an initial 28 U.S.C. § 2255 motion such as defendant's. *United States v. Gentry*, 432 F.3d 600, 605 (5th Cir. 2005). Therefore, under the law of this circuit, neither defendant's *Blakely* or *Booker* claims are cognizable on collateral review by this 2255 motion. Defendant's claim that his sentence, assessed under the federal Sentencing Guidelines, is unconstitutional and should be vacated, based upon *Blakely* and *Booker*, are without merit.

Even if *Booker* were given retroactive effect, and even assuming a finding were made that application of the Guidelines as mandatory was plain or obvious error post *Booker*, defendant

cannot show prejudice, *i.e.*, cannot show any error affected his substantial rights because the record does not indicate the district court would have imposed a lower sentence had the court treated the Guidelines as advisory rather than mandatory. The district court assessed defendant's sentence at the top of the guideline range. Given the lack of any indication in the record that the district court would have assessed a lesser sentence, defendant cannot demonstrate prejudice.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by defendant MANUEL ISAAC ROMERO be DENIED.

## V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a file marked copy of this Report and Recommendation to defendant and to each attorney of record by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this  21st  day of May 2007.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is

eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation.  Service is complete upon mailing, Fed. R. Civ. P. 5(b), <u>and</u> the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e).  Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed**.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).